Ruben v. Bell, Mr. Cheslovsky. May it please the Court, Counsel, my name is Bill Cheslovsky and I represent the appellant, Phil Ruben, who is also the The issue we present today raises a pure question of law. It's well-defined and it comes to you on a clean record. That question is whether a cost award entered against a debtor by an arbitration panel, which panel was only considering pre-petition claims against the debtor, is itself a pre-petition claim or instead was that cost award somehow transformed into a post-petition claim, thus becoming immune from discharge simply because the debtor participated in the arbitration that took place post-petition. Now the Bankruptcy Court, which deals with these issues every day, held on the detailed opinion that the cost award, just like all the other claims in the arbitration, must be a pre-petition claim. They go hand-in-hand. Since only pre-petition claims were being arbitrated, any cost award related thereto must likewise be deemed a pre-petition claim. The Bankruptcy Court summed it up pretty elegantly, saying the cost award, quote, arose from Ruben's, that's the debtor, arose from Ruben's alleged pre-petition conduct and Bell's pre-petition lawsuit against him for that very conduct. It is therefore a pre-petition claim covered by the discharge. I am here today to say the court... Why was arbitration used rather than litigation in the Bankruptcy Court on those claims? A couple reasons, Judge. First of all, there was an adversary filed by Ms. Bell. Before she, she originally filed suit in 2008 against Mr. Ruben and 40 others. Many claims brought, I think it was a 13 count complaint in state court. The defendants moved to compel arbitration originally. It stemmed from a contract, from an agreement, an engagement letter. Then next, Mr. Ruben files his bankruptcy in 2010, two years later. After that, she files her adversary. After that, the most relevant factor... Her adversary essentially incorporated the same claims from the state court proceeding, right? More than essentially incorporated, that literally mimicked word-for-word. So Ruben was not required to arbitrate at that point, was he? Correct. We could have continued with, call it parallel, inefficient proceedings. Right, so it was his choice to arbitrate. Arguably, yes, it was his choice, but what's lost in this, and this is what the district court eventually glommed on to, the factual predicate of who did what when. When did he, when did he move to join? When did she file her original case? It's a red herring. I'm loathe to go down that road. It's a rabbit hole of sorts because again, she sued him first. Next, she filed the arbitration. Next, she was already proceeding against these other non-debtor defendants. The arbitration was going forward, period. It was with or without him. But the most interesting thing, if we're going to go down this road, she reopened his bankruptcy case to arbitrate her negligence, but not her fraud claims. So the arbitration's going on, she files her adversary. After she files her adversary, which mimics these same non-dischargeability accounts, she moves to reopen his bankruptcy case, says to the bankruptcy court, we'd like to arbitrate our negligence claims against Mr. Rubin, but not the fraud claims for now. We consented to that, had no problem with that. The reason she wanted to do that because of insurance proceeds. After that, her claims for non-dischargeability against Mr. Rubin, of course, they needed to be heard somewhere, had to be heard somewhere. And finally, to be clear, once Mr. Rubin moved to reopen his bankruptcy case, call it the second opening. She moved the first time, he's moving the second time. He did so saying, well, the arbitration's going forward, you're arbitrating your negligence claims against me. Why not have it all in one proceeding? For all the reasons you judges already know, judicial economy, efficiency, consistency of verdicts. She consented to that. We entered an agreed order to arbitrate all the claims there. So again, I'm loathe to go down this road because it's a legally irrelevant distinction. Regardless of where these claims were ultimately litigated, they are pre-petition claims. They go hand in hand. The only cases they're able to cite, which the bankruptcy court dismissed, are cases where the debtor, when the arbitration goes forward, has something to gain. The debtor can win something. Here, by definition, the only thing Mr. Rubin did was defending her claims for non-dischargeability. So in the other cases, for instance, in Haddon, the case of the 1986 Wisconsin bankruptcy. But if every one of these proceedings that grow out of a post-petition, out of a pre-petition claim, if all of those are treated as pre-petition claims, what is to prevent the person defending against the claim to just, you know, act with total irresponsibility because anything that happens in this post-petition proceeding is going to be discharged. Any additional debt he incurs fighting the trustee is going to be discharged if it's treated as a pre-petition claim. But when you talk about judge total irresponsibility, the cases are clear that if in this other proceeding there's something akin to sanctions, which think about it, that deals with new conduct. You're doing a new act, a new post-petition act. Here, everything stems. Isn't that what those costs are, though, that they're the cost of the arbitrators who are hearing the claims? They are mostly the cost of the arbitrators hearing the claim. And the length of the hearing that they have to hold, in part, depends on what Mr. Rubin does. Well, in part, this was against many co-defendants. As Judge Doyle pointed out in her, I think it was 20-page opinion, she addressed this well, stating that even if the case had proceeded with the adversary, and if for some reason she, Judge Doyle, asserted cost against us, even as the quote prevailing party or whatever nomenclature you want, they would still be a pre-petition claim. I mean, the best way to teach... But why would the costs be discharged? I don't get that. If the costs are incurred because of conduct in a subsequent proceeding, I don't know what, why that should be discharged. Because if you carry it to its logical conclusion, I'll give you the best... No, I don't want a logical conclusion. I want a reason why costs or other, you know, impositions, which are the nature of sanctions, should be discharged. The short answer, Judge, is it stems from the definition of a claim in the Bankruptcy Code. No, not a definition of a claim. I want something sensible, right? What's sensible? If you, I mean, it's one thing, you know, you get into trouble, you can't pay your debts, you declare bankruptcy, you get a discharge, you have your free start. That's, okay, that's basic. But if in the course of the bankruptcy proceeding you impose costs on your opponent, and as a result he has a claim against you for those costs, why on earth should you be entitled to a discharge? We have, there's no problem with it being deemed a claim. The question is, does it stem from pre-petition conduct and pre-petition acts? Look, you're not answering my question. I want a, I want an answer why it makes sense to allow a discharge of a debtor who, in the bankruptcy proceeding, is imposing unnecessary expense on his creditors. Because he wasn't imposing unnecessary expenses on his creditors. The claims that she brought against him, that he was defending, that needed to be defended somewhere, somehow, her claims for fraud, they were going to be defended somewhere. So there was no imposition and they all stem, call it akin to the fruit of the poison. But do you agree that if a sanction is imposed in these adversary proceedings, the sanction should not be discharged, even though the the proceeding arose from a pre-petition? In a word, yes, absolutely. We cited cases stating that's clear because that's new conduct, that's a new act. You're absolutely right, Judge, that takes place post-petition, that takes it out of the quote general rule. I mean the, what I was getting at before, if you tease this out, think what happens every day in this building in bankruptcy cases. Debtor files, creditor files a proof of claim thousand times a day. If you carry this to its logical conclusion, then the debtor files an objection to the creditor's claim. Again, happens every day. By this logic, the debtor is imposing costs at this point on the creditor because they have to now litigate the claim. But they're unavoidable and the debtor goes too far and is sanctioned, whether the sanction ought to be. This was not a sanction, Judge. This was simply her claims against us for non-dischargeability, which she lost on, her claims for non-dischargeability. This is just the cost award associated with it. As Judge Doyle held, they go hand in hand. What the district court distinguished on, this factual predicate, it's a red herring. Well, costs imposed on the debtor? The cost in the arbitration, the arbitration panel did not elaborate why they did this, which is an interesting question. Why did they do it? Doesn't matter. Well, why did they do it? The candid answer is nobody knows. We speculated because we figured you may want an answer to that in our papers. The most logical explanation is she sued 40 people. They settled one by one or in groups. By the time the three-week evidentiary hearing came on her fraud claims, there were three defendants left, Mr. Rubin and two others. So they had a three-week hearing before the panel. After the hearing, but before the ruling, she settled with the other two remaining defendants. So only Rubin was left standing. She settled for a substantial sum. The panel in their ruling, it was not a reasoned ruling, it was a one- or two-page ruling, said they were considering the claims that had been the only man left standing, Rubin, at that point. So the long-winded answer to your question, why did they do it, besides just not knowing, the best evidence or the best speculation is she had collected large sums from all the other defendants and Mr. Rubin, but she lost on these remaining fraud claims. So the panel, the best guess is she was a winner in some sort of way, and perhaps that's why they taxed costs against the only guy left standing. Did Rubin object to this cost award? No, he didn't object to the cost award because we didn't have to go there. Because he expected them to be discharged. We didn't need a cannon when a fly swatter would do. We didn't have to go there. Are you saying that the arbitration panel found in favor of Rubin on the fraud claims? Absolutely. I'm having difficulty getting that out of the language of their ruling. The panel held, quote, she shall take nothing on her claims. That's on each level of the case. What's most interesting is that her original complaint, the adversary, had three counts, these three fraud claims. Then she, by the way, the district court affirmed on that ground, they did not cross appeal, that is not before you, but her claims for non-dischargeability, those are over, she lost. She amended her complaint to add this fourth count that, okay, I lost on my millions of dollars on non-dischargeability, tens of millions of dollars, but the panel issued this cost award. So I'm going to amend my adversary to say, well, those are somehow post-petition. That's the only count left. Why would the arbitration panel award costs if it knew they were non-dischargeable? Well, you're presuming a lot there, Judge. I don't, that wasn't before them. What wasn't before them? They're a panel dealing with her straightforward fraud claims. What were left at that point were three fraud claims. The panel has unfettered discretion, frankly, in terms of what it wants to do for costs. So it wasn't before the panel, you know, that was the panel perhaps aware that he was in bankruptcy? Again, speculation but common a two-page simple decision saying she loses on her millions of dollars in non-dischargeability claims, and as an afterthought, he has to pay this cost award for $171,000. But the legal principle, which we've run away from, is the panel was only considering pre-petition claims. They go hand in hand. Otherwise, you end up, though I only care about winning this case, you care about broader things, and if you go beyond this case, without being too dramatic, you open up a Pandora's box. I have exceeded my time. Okay, thank you very much, Mr. Sheslovski. Ms. Thibbert-Ind? That's how you pronounce your name? Good morning, and may it please the court. My name is Megan Thibbert-Ind, and I represent the Apple Company, Laura Lee K. Bell. There are four critical, undisputed facts that control this appeal. On April 6, 2010, Mr. Rubin filed his Chapter 7 bankruptcy petition. Four months after the discharge order was entered, Mr. Rubin filed a motion to stay Ms. Bell's adversary proceeding before the bankruptcy court in order to, quote, allow all Bell's claims against him to be litigated in the first instance in the arbitration. By doing so, Mr. Rubin agreed to throw his hat in the arbitration ring with his former law firm and partners post discharge, and he admits here today that the arbitration was proceeding without him. He had no reason to join the arbitration at that point in time. On March 6, 2012, pursuant to its discretion, the arbitration panel issued an award finding Mr. Rubin liable for Ms. Bell's portion of the AAA administrative costs and fees. Further, Mr. Rubin, in his reply brief, concedes, quote, but of course the cost award at issue here is not tied to any separate conduct committed by Rubin other than his mere decision to join the arbitration. These facts are undisputed according to Mr. Rubin himself in his briefing and here today. The central issue for the court is determining what particular conduct led to the award. Now the district court properly focused not on how the ball initially got rolling, in this case Ms. Bell's pre-petition complaint against Mr. Rubin, but rather that the award resulted because of Mr. Rubin's decision to pursue a path that led to his post discharge obligation. Now Mr. Rubin argues that he was merely defending against Ms. Bell's pre-petition claims, so the award must be discharged. But we cannot ignore that Mr. Rubin chose to leave the protections of bankruptcy court and choose an alternative venue in which to defend against Ms. Bell's claims. That choice was not free. In doing so, Mr. Rubin subjected himself to the AAA's rules, including Rule 50, which grants them unlimited discretion to assess administrative costs. Mr. Rubin's Ms. Bell's substantive claims is fatal to his appeal. Why did, it's a substantial costs award, why did the arbitration panel award these costs to him if he didn't prevail in some sense? Well we would argue, Your Honor, that they awarded the costs because we did prevail in some sense. I would disagree with counsel's characterization of that. It's true that the parties agreed that we would not require a reasoned award by the arbitration panel, so we got what we asked for, but the award is quite clear that what the panel says is that the damages attributable to Mr. Rubin's conduct had been compensated. So I think it had been compensated, is what the award says. I think it's logical that the arbitration panel wanted Mr. Rubin to have some responsibility for his conduct and given their determination that the damages had already been covered, they issued the award against him so that he would have that accountability. But they didn't say that, right? They didn't, Your Honor. They didn't, Your Honor, but I think the award, I think it's quite reasonable that had they not believed that Mr. Rubin had some liability here, they would not have assessed costs against him, but we won't know. The reality is, is that the arbitration panel had unlimited discretion, and they used it here. What's significant, Your Honor, is that if the award was not tied to Ms. Bell's substantive claims, as Mr. Rubin admits, then it was the result of that decision to join the arbitration. That's what's important here. That's the key event that the appellant in this case continues to ignore. He would like for the court only to analyze Ms. Bell's filing of her pre-petition complaint and then the issuance of the award and ignore all of the intervening events. Well, the district court didn't do that here. But further, let's assume for a second that the award is connected to Bell's remaining substantive claims, or was at the time when the award was issued. Mr. Rubin is in a catch-22 here, and we address this in our brief. If the award is tied to the pending claims, all that were pending were fraud claims, and those would be not, those would similarly be non-dischargeable. Had Mr. Rubin decided, as was his right, that he would stand behind the protections of the bankruptcy court and the state provision, my client would have been forced to litigate her claims against him in the adversary proceeding. It was Mr. Rubin's choice to pursue that alternative litigation venue. He wanted to defend his claims alongside his former law firm and his former partners. He told the district court that the reason he did it was for efficiency in judicial economy. That may be, but that doesn't make it any less a choice. And making that choice exposed Mr. Rubin to a post-discharge liability here. Now, the district court focused very specifically on two cases, the In re Haddon case and the In re Scherznap case, one from the Western District of Wisconsin and the other from the 11th Circuit. Notably, the reasoning from these cases was also recently adopted by the 9th Circuit Appellate Bankruptcy Panel in the In re Gillespie case, which is a case that now overturns a bankruptcy opinion that Mr. Rubin relied on in his opening brief. These cases, these cases included a debtor not unlike Mr. Rubin, who took affirmative action after the discharge order. Mr. Rubin moved to stay the They stand for the proposition that debtors don't get a free pass for their post petition conduct. As your honor properly noted, if you if you engage in conduct after your bankruptcy, you're responsible for and that's what we have here today. This case is completely unlike the cases that Mr Rubin relies on in his briefs. Those cases they deal with a statutory or contractual attorney fee. The creditor had a contingent right to fees prior to the filing of the bankruptcy petition in those cases, either by contract or by statute. That's not what we have here. Mr Rubin admits that the cost award did not derive from any express contract right between the parties. It similarly did not result because of a statutory right to fees. We know that it accrued. Are you arguing that no expenses incurred after the filing of the bankruptcy petition can be can be discharged? I'm not sure I understand the question, your honor. What what I'm arguing is that. Well, I mean, suppose the bankrupt is in order to, you know, get his discharge. He incurs various costs, litigation costs and so on. Um, can't they? Can they never be tied back to the pre petition? Uh, you know, creditors claim that he's defending against? No, your honor. There are cases where where costs that were incurred during the bankruptcy and during a discharge proceeding are dischargeable. That's not what we have here. These are not costs or fees that were, um, that were created while we litigated in the adversary proceeding against Mr Rubin. These are different from that, from this particular circumstance that your honor refers to. These were an entirely different proceeding. These were these were well, they were substitutes, right? It's just an alternative form. They were arbitration versus litigation, an alternative forum, and they were fees that never would have existed had Mr Rubin not joined the arbitration. He never would have been exposed to the award had he stayed in the bankruptcy proceeding. It would not have existed in this case if the adversary complaint had been had been argued before. But he would have, he would have had to defend against the adversary complaint. He would have had to defend against incurred costs and so on. And wouldn't they be dischargeable? Your honor, we would have had no statutory contractual right to attorney's fees if this case had been litigated before the bankruptcy court. That's accurate. The only reason we are entitled to fees is because this case proceeded in an alternative venue that Mr. Rubin chose, the arbitration. That was the cost of making that choice. That seems kind of arbitrary. The alternative venue, the arbitration, may be cheaper way of resolving these disputes than the adversary proceeding. Admittedly, your honor, it may be cheaper. That doesn't make Mr. Rubin any more or less liable for the award. Efficiency or economy is a choice, your honor. It's, it's, he was not compelled to arbitrate in this case. Your honor, what I would say, as I see that I'm running out of time, what I would say in conclusion to the court is that we know that bankruptcy may not be used by debtors as a shield to insulate them from the costs of their post-bankruptcy conduct. Mr. Rubin agreed, post-discharge, to join an arbitration that he wasn't a party to, he had no requirement to participate in, and in doing so, he subjected himself to the panel's authority to assess costs. The district court got it right here, and we ask that the court affirm. Thank you. Okay, thank, you very much. Mr. Cheslovsky, your time has expired, but you can have a minute or so. Thank you, judge. A few things briefly. There is not a single case where a debtor, not one, where a debtor is held liable for these type of costs, except where the debtor has something to gain. In the Haddon case, the debtor had an exempt asset it was trying to protect. If the debtor had won, the debtor would get something. In the case we cited last week, that we gave the authority to this court, the Gillespie case, the debtor had 12 counterclaims in the underlying state court case. It was using it as a sword, not a shield. Again, I'll be redundant, there is not one case where when a debtor was only defending against non-dischargeability claims, that those costs became post-petition, not subject to discharge. She keeps saying Rubin had a liability. Rubin does have a liability, but it's a pre-petition liability, period. It travels with her claims, they go hand-in-hand. The other notion, the final point is, this implicitly would overrule the Supreme Court's case in Travelers. There was a big brouhaha for years, which is if a contract provides for attorneys fees, and then in the bankruptcy case, the creditor has these attorneys fees. For a debtor, the question is, does the creditor get to add those fees to its claim? The Supreme Court resolved that in Travelers. The answer is yes, that's the easy part. But it adds it to its claim as its pre-petition unsecured claim, because it all stems from a pre-petition act. This would be a first. Thank you. Okay, thank you very much to both counsel.